United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit Court of Appeals. Let me just check. We have one counsel appearing by Zoom. Sir, can you hear me? Could you give me a thumbs up or something if you can hear me? Yes, I can hear you, Your Honor. Thank you. Perfect. Thank you very much. Madam Clerk says we just have one person participating by Zoom today. So that's the end of the sound check. My name is Morgan Christen. I'm one of the judges on the circuit court and I want to welcome you to the Ninth Circuit. My chambers are in Anchorage, Alaska and I'm delighted to be here in Portland today. Judge Berzon is sitting with me. She's one of the judges on the circuit court as well. And her chambers are in San Francisco and we want to thank and welcome Judge Block who's flown across the continent once again to help us out with our calendar. We appreciate his help very much. Just a little housekeeping. We have two cases that have been submitted and we will not hear argument. In United States v. Bowman, which is 20-30175 and Weaver v. Gregory, 21-35324. With that, we'll go to the argument on the first case on the calendar, which is Babatunde v. Garland, 19-70815. Good morning. May it please the court, my name is Corrie Hong and I represent Petitioner Clement Babantude. There are three reasons why the BIA erred in denying Kat. First, on torture. Boko Haram made targeted and specific death threats against Mr. Babantude when they threatened to kill him by phone, notes, hand-delivered messages, including threats to behead him if he continued to help the Christian network, watch group. They lured him to the church bombing that killed his father, sister, and brother. They physically detained him at Roblox when he confirmed he was Catholic. The facts in this case are compelling. So just on my scorecard, and we haven't discussed it in advance, but on my scorecard, the facts are compelling. And so you know there's an issue of waiver, right, at the BIA level. The question is whether this is preserved. Could you speak to that? Absolutely. On exhaustion, there are three different reasons as to why he was exhausted. The first, there's no question that the BIA had noticed that he was contesting the denial of DCAT because they cited to that decision by name, and then they cited to the pages of the IJ decision in which he decided this issue. Now the BIA said that it was waived because he, quote, did not meaningfully challenge his decision. But that's different from no challenge. The RAM case that the BIA cited to in footnote two, there the asylum applicant had no mention of the one-year bar, and the BIA said, quote, he did not appeal the immigration judge's decision regarding that aspect of his claim, unquote. Mr. Babintude challenged, quote, the court's denial, unquote, of his CAT claim. That's AR6. Under Zhang, the mention of, quote, reversal of the IJ's denial, unquote, of CAT was enough. So Zhang gives you support. The second alternative theory to find exhaustion is that Mr. Babintude's pro se briefing discussed all three elements of CAT. This is more than Baer. This is more than Zhang. In Baer, there, when he challenged the particular serious crime finding, the court said, if we look at the context, there are only three elements of the particular serious crime finding, so that is what was preserved. And they allowed then Mr. Baer to present a new claim to the first element because of that. And here, Mr. Babintude's claim that he was contesting the court's denial of CAT is by the same because there are only three elements of CAT that are at issue. And unlike Baer, the BIA cited to the IJ decision that denied the three elements of the BIA decision. Also, AR13, he doesn't use the magic words of acquiescence, torture, internal relocation, but he uses the words that the IJ failed to apply to country conditions and the evidence, and that, quote, that demonstrated that the government of Nigeria had woefully failed to control Boko Haram, unquote. So he, it's unartful, but he does discuss acquiescence, torture, and internal relocation. So the, I think that's the part of the, the part where he uses persecution instead of torture. I don't think he ever uses torture, right? No, he doesn't use the magic words torture. But it's a pro se filing. Correct, which are construed liberally. So is, if we were to conclude that there was sufficient exhaustion, would we then remand to the agency or would we try to decide this ourselves? Your Honor, there are two options. Under Xochitl Jaime's, under Halley, under, under Avendado, when there is but one conclusion from the record, this court has the authority to grant Kat outright. Here we have credible testimony. We have evidence of past harm, including the death certificates that identified his family members being killed in a bombing. We have country condition reports that aren't being contested. What do we have regarding relocation? On internal relocation, what we have is his testimony and we have his country condition reports. In the north, Boko Haram continues to control it. That's at AR 352. I appreciate that, but I'm trying to get at, and we've gone over this case carefully. It's an attention-getting case, to be sure. Is it really your position that there's but one outcome we could reach or that could be reached here and that we should go this route, not Ventura? Your Honor, if you disagree with me, I would not object to a remand. I would be thrilled to have this properly litigated before the BIA. What's your best shot that we should do, that we should decide on? What's your best shot? Well, Your Honor, as you said, the facts speak to past torture. Acquiescence is shown under Boko Haram, and under internal relocation, the best case is Xochitl Jaime's. Where there, the past torture showed that she was under death threat from the cartel, but her lesbian identity prevented any possible relocation in Mexico. And there, the court said, yes, the discrimination she would face as a lesbian doesn't rise to torture, but it's enough to show that any relocation would not be reasonable. So Xochitl Jaime's is the best case on internal relocation. Let me just check. Are there questions from the panel? No, it doesn't appear that there are. Would you like to reserve some time? Yes, Your Honor. Thank you. Counsel, are you still with us? Go right ahead. We'll hear from the government. Yes, Your Honors. Can you hear me? Yes. Great. Good morning, Your Honors. May it please the Court. Giovanni DiMaggio on behalf of the Attorney General. Your Honors, forgive me, was there a question just now, or was that another sound? That was another sound. I don't know what it was, but it wasn't a question. Forgive me. Okay. Your Honors, Mr. Babatunde, having expressly abandoned his asylum and withholding removal claims in his counsel's reply brief, this case will rise and fall on the Board's waiver finding at page three of the administrative record, which is fatal to the Court's jurisdiction. There's this phraseology that's begun to appear in BIA opinions that they didn't meaningfully contest it, which is different from they didn't contest it. And here he did contest it. It was mentioned. And from there, and usually what I've seen recently is that language then ends there. But here they went on and said he therefore waived it. But the waiver cases, as your opposing counsel has pointed out, are cases in which there was no mention. So what does this didn't meaningfully contest category mean, and how does it lead to waiver? Well, sure, Your Honor, two responses there. So first, to the extent that there's an assumption here that the Board did not, in fact, may not have, in fact, intended to deem that claim waived, I want to point out as a threshold matter that Mr. Babatunde waives in his opening brief any challenge to the Board's waiver finding, as Respondent argues in his answering brief. And even in his counsel reply brief, Mr. Babatunde does not rebuff the Respondent's argument that he waived any challenge to the Board's waiver finding. The closest he comes to this, and this is where I'll get to your question here, is when he baldly and passingly states on page four of the reply brief that the Board did not find waiver. So it did, in fact, deem waiver, and here's why. But as I point out, it didn't do so in the usual terms. They didn't say that he didn't raise it. They said he didn't meaningfully contest it, and therefore he waived it. Right. So what you're getting at, Your Honor, is the merits of the waiver finding. I do want to be clear, and I will answer that question. What I want to be clear as a threshold matter, though, is that there was, in fact, a waiver finding. So I don't want there to be any ambiguity as to that, because what the Board did here was it carefully identified each aspect of the IJ's decision that Mr. Babatunde failed to challenge on administrative appeal, including deferral removal, expressly declined to disturb them, expressly reasoned that this was because they were waived, and then cited matter of IRM. And then cited an off-point case, because the case was a case in which the issue was never mentioned. In addition to that, Your Honor, take a look at what the Board did not do. The Board did not, as it did when addressing the IJ's firm resettlement and material support findings, provide any indicia that it was reviewing the deferral removal claim. It did not, quote-unquote, affirm the IJ's deferral removal claim. It did not, quote-unquote, properly deem the IJ to have properly applied or properly evaluated. Your argument is that the Board made a waiver finding, even if incorrect, and that the pro se opening brief didn't adequately contest the waiver finding, even if it's wrong. And therefore, this man, who seems to have a pretty good, quite good CAT claim, should go back to Nigeria. With the caveat that our position is the Board properly made a waiver finding, yes,  The second argument, and this gets more to your question. Wait. How did it make a proper waiver finding? I mean, you've been talking about waiving the waiver, but you never made a merits argument about why it was a proper waiver finding. As I just noted, Your Honor, the Board, all it did was identify those aspects of the IJ's decision. I know it made a waiver finding. I want to know why it was a proper waiver finding. Well, it's proper in that it's supported by substantial evidence, which if the Court were to disagree that the respondent waived any challenge to the Board's waiver finding and actually looked at the waiver finding, it would have to review it for substantial evidence under Code Agolean 335F3 at 1006. And importantly, as Bayer instructs, which is the case cited in Respondent's third 28-J letter, the administrative appeal brief should be considered in the context provided by the IJ's written decision and that the claim in question has to have been raised in a manner sufficient to put the Board on notice of what was being challenged. So when you look at the context of the IJ decision, you see on pages 39 through 53 in particular, a thorough written decision carefully parsing the basis for denying asylum, withholding of removal under the INA, withholding of removal under CAT, and deferral of removal under CAT. When you consider that context and look at the Pro Se Administrative Appeal Brief, he has a well-structured and organized brief with subheadings organized by issue and citations to applicable provisions of the INA, the Code of Federal Regulations, and circuit precedent that wholly exclude any reference to deferral of removal outside of his one passing statement and introduction. And instead, only challenges one, the material support bar, two, the firm resettlement finding, and three, the weighing of country conditions evidence, and this is critical, and Judge Kristen mentioned this, that showing Nigeria was unable to control the group that was the source of his persecution. And that's notable because he obviously doesn't mention torture. He doesn't mention in all of his careful citations to the applicable precedent and statute and code any provision that refers to deferral of removal. In fact, he happens to precisely hit the bullseye on citing 18 CFR 1208.16 pertaining to CAT withholding and does not reference 1208.17, which would pertain to deferral of removal under CAT. So we have to be concerned about, counsel, counsel, we have to be concerned about consistency with our case law. What's your response to opposing counsel's citation to Zang? How's this line up there? Well, Your Honor, the court's obligation. I don't think it lines up favorably for your team, so I just want to give you a chance to respond. Can you remind me the proposition of Zang you're referring to? Well, what it takes to waive, right? When a petitioner has, I don't mean to catch you off guard, it says when a petitioner has explicitly mentioned, in his brief to the BIA, that he was requesting reversal of the IJ's denial of relief under CAT, that request was sufficient. It goes on from there. It didn't take much in this reported opinion. Well, Your Honor. I'm not suggesting we would reach it in the first instance. I think that may be a step too far, but it seems to me opposing counsel has a pretty strong argument on this point. You're right that it would be a step too far to consider it in the first instance and even petitioner's counsel, Zang, does not object to a remand under Ventura, which would be the right call here if we were to get to that point. But, Your Honor, your case law, to answer your question, the court's obligation to liberally construe pro se briefs does not excuse pro se litigants from supporting their claims of legal arguments, including under federal rule of appellate procedure 28, and you could look at Acosta Huerta, 954F2nd at 586 for that proposition, nor does it permit this court to supply essential elements of the claim that were not initially pledged. Right, but are you going to talk about Zang? Are you going to talk about Zang? Because that's what I need to hear, if you've got it, a response to this case that we've got, because I'm concerned about consistency in our case law. And I appreciate you haven't read it, but I did read the operative blurb. Yes, Your Honor. When a petitioner has explicitly mentioned in his brief to the BA that he was requesting reversal of the IJ's decision, denial of relief under CAT, that request was sufficient? Well, Your Honor, he's not requesting removal, for one, or excuse me, reversal. He simply states in his introduction that he appeals the honorable judge's order, which included the denial of his request for relief from removal under asylum withholding and the torture convention. I mean, on the face of his appellate brief, he doesn't actually ask for reversal. He's simply identifying the decision that is being challenged on administrative appeal. And importantly, he doesn't give the board any notice of the fact that he's challenging deferral of removal. And I would ask the court to please look, by comparison, for example, at his pro se opening brief. It would be a different story if the opening brief that he submitted pro se to this court was the brief that he submitted to the board, which, starting on page 41, under a heading of deferral of removal for CAT, he goes into arguments at length, including breaking it down by subheadings on each finding, the past torture finding, the acquiescence finding, and the relocation findings. There, arguably, there's enough to put a body on notice. In this case, it would have had to have been the board. It's too late to put the court on notice of those issues. But he's clearly capable of distinguishing the nuances here of the differences between all these claims on review. So it's not sufficient to say that his unable or unwilling argument, couched in persecution language, was enough. In any event, as Your Honors acknowledged, I see my time is running out, if I may conclude. Sure. As Your Honors acknowledged earlier, or as Judge Christin acknowledged earlier, Ventura here would counsel against the court addressing this issue in the first instance, were it to get past the waiver of the waiver, as well as the failure to exhaust generally. And I'll also note that, you know, respondent has not filed a written response yet, given the recency and number of the 28J letters that petitioner filed, but will file a written response following the argument. And for those reasons, the court should deny the petition for review. Thank you. Would you like to use your rebuttal time? Yes, Your Honor. I have two quick points. The government's argument boiled down to the fact that he wrote a better pro se brief before this court. He should be penalized for his pro se brief before the BIA. He was detained the entire time. And the fact that he was able to learn while in detention should not be held against him. Your Honor, the second point, I agree that Zhang is absolutely the best case. It's on all squares. But just would like to highlight, in response to Judge Berzon's question about is the BIA doing something weird with this meaningfully challenged, I think an interesting case to talk about that is the Ahmed case, where the BIA's conclusory wording that the petitioner there, quote, failed to meet his burden, unquote, actually was something that suggested an independent review by the BIA. So I think in the same way that the BIA said, we will not disturb, and he didn't meaningfully challenged, arguably it could even show that they obviously looked at that issue. Well, that's a little different. Failed to meet the burden and failed to meaningfully challenge. The first is a comment on the merits, and the second is a comment on the structure, whether he meaningfully challenged it. But I've simply noticed that this phrase is turning up a lot, and it seems to mean something other than it wasn't mentioned. Yes, Your Honor, especially in contrast to footnote 2 and RAM, when it clearly was not mentioned. If there are no further questions— But wait a minute. What about the waiver of the waiver question? Well, Your Honor, it's whenever—there are two responses to that. One, the government raised this issue in his answering a brief. I'm allowed to raise that in the reply. He says you didn't unwaive it at that point. It was the first argument that I contested in the brief, that exhaustion was met, and so that is— But his—this is getting technical, but he says, but you didn't discuss the waiver problem. To your earlier phrasing, this court always has jurisdiction over jurisdiction. It has jurisdiction to look at whether the BIA properly deemed this to be a waiver rule or not. The argument in the open brief is saying that the BIA absolutely did not, that the BIA said—they claimed it was waiver, but they said it was because it was not meaningfully challenged, which is correct. So what you're saying is that waiving the waiver wouldn't matter because we still have jurisdiction to decide the jurisdiction? Yes, Your Honor. Yes. And if there are no further questions? I don't think there are. Thank you very much for your argument. Thank you. Thank you both for your argument.
judges: BERZON, CHRISTEN, Block